Thank you, Judge McKeown. And may it please the Court, I'd like to reserve two minutes of my time for rebuttal, if I may. In the trial below, the district court erred when it required my client, Sean Hoard, to prove that the defendant derived pleasure from extreme cruelty in order to prove the excessive use of force under the Eighth Amendment. That standard was wrong, and this Court should reverse and remand for a new trial. I have two points I'd like to address, Your Honor. The first is that this Court has the discretion to depart from plain error review and to apply de novo review, and it should exercise that discretion. And the second point I'd like to address is that the correct standard under the Eighth Amendment is the intent to harm or the intent to punish. It is not the intent to derive pleasure from extreme cruelty. On the first point, Your Honor, Sotomayor Do we need to go to de novo review in order for you to prevent it? Your Honor, I certainly recognize, Judge Baez, that to the extent this Court was applying plain error review, I'd have a tougher road to hoe. But I still believe this Court could reverse under a plain error standard because the error is clear and obvious, clear or obvious, and affects Mr. Hoard's substantial rights. But I believe that this Court has the discretion and should apply de novo review under well-established Ninth Circuit precedent. This Court has the authority and the discretion to depart from plain error review where the question on appeal is a pure question of law and where this Court's consideration of that question would not prejudice the opposing party. And I would submit that both of those factors are met in this case, Your Honors. Let me just clarify one thing. So in the district court, when all this came up, the parties agreed to this supplemental instruction. Well, that's right, Your Honor. So let me tell you exactly how it happened. And this is at the excerpts of Record 109 to 113. The jury asked for a supplemental instruction on the meaning of the word statistically. And the parties conferred and said, you use a dictionary definition. It was then Judge Brown who supplied the derived pleasure from extreme cruelty standard. Neither party objected. So we certainly, I make no bones about the fact, and we're not up here saying to the contrary, that this was an unobjected to error and that plain error review would presumptively apply. But this Court has, under well-established case law, in our view, the ability and the authority to depart. So in the civil context, what's your best case that we should apply plain error, that we should apply de novo review? Well, so, Your Honor, I certainly agree that most of this Court's cases applying or departing from plain error review have arisen in the criminal sentencing context, but that's not exclusively so. The Court, the government cited in its red brief, and we discussed in our reply, the Patron case, that that was a case where the Court discussed the departure from plain error review in the context of a trial. And that case cited a case from the 1940s where the Court did the same thing in the civil context, so it wouldn't be unprecedented. And I would also note, Your Honor, that although the departure from plain error review cases have arisen in the sentencing context, none of those cases say or suggest that the analysis is limited to or specific to that context. Rather than the context of a trial. Traditionally, of course, in a civil case, you know, no objection and you're out of luck used to be the rule, but that's kind of evolved over time to, I think, really an adoption of a stricter plain error rule in civil cases. So it's kind of a saving clause, if you will. Do you agree that if plain error is the standard, that it's a stricter standard in the civil context than criminal? Your Honor, I certainly agree that there might be, and I think the analysis, I think analysis can take cognizance of that fact because, you know, the second prong is prejudice and the government may be able to articulate a different analysis of prejudice in a civil context than a criminal context. But here, we are. But we said that it's a little bit stricter in the civil context. Your Honor, I certainly think this Court, I don't think your cases explicitly say that, but I think you could certainly adopt that rule. We said that in CB versus City of Sonora. That was a case applying the plain error standard. It wasn't a case applying the departure from plain error doctrine. No, that's correct. But we said there that we apply somewhat of a more stricter standard. I agree, Your Honor. But you've indicated that even if we go down the plain error path, you have a substantive objection to this sadistic instruction out of the dictionary. That's absolutely right, Your Honor. And on the merits, the very first thing I point this case to is this Court's Robbins v. Meechum decision. I think in that case, you have very significant and very clear statements of the law in five separate passages. This Court described the standard as the intent to harm or the intent to punish. And let me read you just two brief passages that I think are so on point. The first one is, quote, ''Both the underlying purposes of the Eighth Amendment and Supreme Court precedent suggest that an intent to punish is enough to establish a cause of action.'' And the second quote, ''We advance the purpose of the Eighth Amendment by holding prison officials liable so long as they have a specific intent to harm.'' Your Honors, I completely agree with Robbins v. Meechum. The standard is a specific intent to harm, a specific intent to punish. It is not the intent to derive pleasure from extreme cruelty. And I would also point this Court to Farmer v. Brennan in which the Supreme Court described the Whitley and Hudson standard as a standard of knowing or purposeful conduct. I think those make it clear and obvious that the standard is not and cannot be deriving pleasure from extreme cruelty. And, Your Honors, if I may, I'd like to go back and just, if I could. So don't we then, we have to then figure out if we agree that this intending to derive pleasure is really not the foundation, we have to figure out in the context of this case what kind of prejudice that means, whether in terms of it could be wrong and still be affirmed, or it could be wrong and be reversed. But that kind of depends on the impact. So would you address that? I totally agree, Your Honor. I would point this Court to the Alfrahan case where you reversed a jury instruction on a plain error review. And in that case, you know, you described the substantial rights analysis as being akin to a harmless error analysis. And so the standard is, was the evidence so strong and so compelling that absent the error, the result would have been the same. And the answer on this record is no. This was a very close case, Your Honor. You have an extraordinary indicator. The jury asked specifically about the meaning of the word sadistically, which shows that they were struggling with this issue of intent. There was only three hours of direct testimony, yet the jury deliberated for eight hours. Several jurors made comments on the record. They were torn about the result. There is every reason to believe that on this record, if you take away the derived pleasure from extreme cruelty, Mr. Hort would have prevailed and he would have vindicated his right to be free from cruel and unusual punishment under the Eighth Amendment. And if I could, Your Honor, I'd like to go back and end. Just a minute. You know, Mr. Hoffenbach, your statement about how, I think you used the phrase clear and obvious, the rule was before this case was tried, you know, it gives rise to the possibility that instead of plain error, you know, you should go the other way. And maybe this was a waiver. I mean, you did it on purpose. I'm not you personally, but you know, right? It was done, the giving up or giving that dictionary definition was a purposeful act by the, by counsel. Your Honor, I don't think waiver applies. And I would again, I would point this case to the Alfrahen case again. In that case, the district court affirmatively suggested to the party's counsel, you should give this instruction. The counsel said, no, I don't want it. This Court still reviewed that question, no waiver, still reviewed that question and exercised its discretion to reverse on appeal. And this Court's cases have made very clear that in the context of a jury instruction, the standard for waiver would be the voluntary and knowing relinquishment of a known right not met here. And I would also note that was. Why is it not met here? You said it's obvious, clear and obvious that shouldn't have been given. Your Honor, this isn't a case where. Why is that? He said, no, let's give the dictionary definition. Your Honor, because this isn't a case where the judge said to Mr. Horde's trial counsel, you have the right to a jury instruction that doesn't elevate sadistic intent. A judge doesn't have to say that. Your Honor, I think that they do under cases like United States v. Guthrie in the context of a jury instruction. The defendant has to be apprised of and knowingly. That's the key, that the defendant has to know what he's giving up. Absolutely, Your Honor. Absolutely. And you say the rule is clear and obvious. He must have known. It's clear and obvious looking at the case law. I don't think that Mr. Horde's trial counsel knew that at the time, wasn't apprised of that at the time. And I would also note the State doesn't argue for a waiver with respect to the supplemental instruction. They don't argue. They don't argue it was invited here or anything. They do not, Your Honor. You won't see it. I'll save it for rebuttal. Thank you, Your Honor. May it please the Court. Pinesh Shah for the State defendants. We ask the Court to affirm the District Court's judgment. Starting with the standard of review, I'm not aware of any case in which this Court has departed from the plain error standard with respect to and unobjected to jury instruction, whether in a civil or criminal context. We have in civil.  Departed from the. We have in criminal cases. We've applied. We've applied de novo review. I'm not aware of any case involving jury instructions in a criminal context. Certainly, none of the cases cited in the briefs that I'm aware of involve jury instructions in a criminal case. Certainly, this Court has, in criminal cases, departed from plain error review. The question for me, though, is if you apply just plain error review here, why doesn't that get him over the hump? I mean, why doesn't this – why shouldn't we reverse under plain error review? Because it can't be obvious – or it can't be clearly obvious error to provide a generally accepted dictionary definition to a term that both parties agreed to that is contained within this Circuit's model jury instruction and which at least one Federal Circuit court has expressly approved. It can't be obvious. If it were obvious, at least one – no Circuit court would have agreed with that argument. If it were obvious, then the Ninth Circuit wouldn't – I mean, I understand that just because a rule is promulgated as a model rule doesn't make it correct, but if it were promulgated, that at least shows it isn't obviously incorrect. Well, but that's – this definition is not promulgated as a model rule. The definition isn't, Your Honor, but the word is. We wouldn't be here. The word sadistically is in there, but sometimes these things come in pairs because lawyers and judges like to write either in twos or threes, as you know. So I think that even though it's in the Ninth Circuit jury instructions and you're right, that doesn't always mean it's right, but we'll just take for given that that's – that the instruction itself is okay. And it would have been okay even if the judge said just read the instruction, right? We probably wouldn't have much of an appeal. But once the judge goes further and defines it, there are various meanings of statistics, right? There are. I think the most commonly understood ones are the ones that the district court gave, and that's what the Eighth Circuit has found as well. But that's contrary to what the Supreme Court has said. Right. So if I were writing on a blank slate, I would agree that the word sadistic introduces some confusion that's unfortunate. Yeah, well, it's pretty clear. The Supreme Court is talking about intent to harm. But so I think what's important here is malicious alone isn't enough. I think realistically the standard is something more than malicious. Well, what they're trying to get at is that in the Eighth Amendment context there's a higher burden of proof that the plaintiff has to meet. Yes. But they don't have to show that the officer, you know, gained pleasure out of beating somebody. But they have to show more than just the intent to harm or punish, because as we've noted in our brief, there are situations in which an intent to harm is permissible. It's just a question of whether that punishment is cruel or unusual. Well, first there's an objective standard, and then there's a subjective standard. And it's the intent to harm which is what this is getting at. Well, so. Go ahead. Can I just follow up? When you do that, I mean, if you look at synonyms for sadistic, they aren't this take pleasure part, but they're like cruel and barbarous. So it's like intent to harm in this cruel and unusual or cruel and barbarous way. So I think this intent, I mean, this getting pleasure out of it doesn't really comport with how Eighth Amendment jurisprudence is, does it? I mean, can you point to anything other than the Eighth Circuit? So, again, I'm not saying this is a correct instruction. I'm saying it's not obviously incorrect. And maybe another way to get at this is to, and I apologize for not including the model civil instruction in my brief. I linked to it. But I'll note that there's a material difference here between the model instruction and the instruction that the parties agreed to. The model instruction contains the part about having to prove the defendant acted maliciously and sadistically for the purpose of causing harm. The instruction given in this case ended there. The model instruction goes on to say, and not in a good faith attempt or a good faith effort to maintain or restore discipline. And so that proviso is what shows that malicious isn't enough because a malicious act that's intended to restore order is okay. And so this kind of loops back to the failure to preserve this question. I think in some ways the instruction that the parties agreed to was more beneficial to plaintiff because it just said maliciously and sadistically without including this other piece. But without that other piece, for the instruction to be correct, sadistically has to mean something more than malicious. May I just ask you, can you recount how that little phrase got dropped out? Was that just not as part of the proposed instruction? Correct, Your Honor. So there's no record as to why that happened. It just wasn't. It happened. It happened, yes. Thank you. But, I mean, this again goes to why this error can't be plain. Because, you know, part of the obviousness is, you know, it can't be plain error if the parties kind of got there for some reason that was strategic or otherwise not really reflected in the record. And for those reasons, I think, you know, this Court has discretion whether or not to correct plain error. And this seems... Let me get to whether it's plain error, de novo, or heightened plain error. Let's get to the effect on the trial. And here's what bothers me is that by the time we get to the jury instructions, you know, at the end and the jury's asking the questions, the evidence is in. So the case, if you knew at the outset of the case you have to show that the guy got some sadistic pleasure out of it, that would shape how the evidence is put in. But here we are now. The evidence is all put in. And now we pop up with almost like a whole new element of the cause of action. So that is what is troubling me. Maybe you can address it. So I have two answers, and I hope I have time to get at both. The first answer is, although the definition of sadistic wasn't provided, the dictionary definition wasn't provided until after the jury had begun deliberating, the agreed-upon instruction at the outset didn't contain this proviso that I just read to you. So I think the State could have been in the position of recognizing that although this proviso isn't there, sadistically has to do some more, has to add something meaningful beyond malicious, beyond just the intent to harm, so as to prevent the plaintiff from prevailing on a claim where an officer acted with an intent to harm, but did so out of a good-faith effort to maintain order. I can't recall off the top of my head in the transcript whether there is any colloquy or evidence about his personal state of mind or what he was thinking or why he was doing it in terms of so-called sadistic, trying to get off on the pleasure of it. Was there anything in the transcript where that was developed, as far as you know? Not that I'm aware of. I think it was all sort of inferential. I mean, you know, we have plaintiff's own testimony of how he perceived the events to have occurred. So my second answer, Your Honor, to that question is that, you know, this is civil context. As this Court said, and I think the unanimous opinion of the in-bank panel in C.B.E. was that the stakes are lower in the civil context. I think everybody who signed on to that opinion agreed to that statement. And I think this affects, you know, a jury trial is a significant event. And I think that if we allow litigants to, in a civil case, to complain about a jury instruction that they agreed to on appeal, you know, that's going to apply across the board in all civil cases. And I think there's probably an army of civil litigators out there who are interested in prolonging litigation for its own sake. I'm not saying in this case, but, you know, purely out of gamesmanship, we'll latch on to this sort of error and say, you know, we can sort of devise a new argument on appeal. And the result of that is that if it becomes apparent that a jury trial is not actually so significant an event, it seems difficult to ask jurors, citizens, to come devote their time, energy, resources, attention to ensuring fair outcomes. I think that, you know, there should be a very heightened standard in a civil case where there's been a jury trial, where a party has asked a jury to come here and say, this is what we would like you to decide. And the jury answers that question. I don't think that a party can, on appeal. As Judge McKeon was saying, this instruction seems to have added an additional element to the case. And it kind of flipped the whole dynamic. Again, if a party asks for that before a jury. Well, he didn't say, here's the dictionary definition I want you to give, did he? Though the district court said, you want a dictionary definition. I'm going to read to you what I'm going to propose. Does that work for you? That's what the court asked. And both parties said yes. If a jury trial means anything, it means that when you have an opportunity like that, you need to object, and you cannot complain on appeal. And this Court's discretion to review for plain error isn't well used in that circumstance. In CB, I think this Court recognized that because of the lower stakes in a criminal context, some of the other factors that govern plain error review that don't apply in the criminal context, one of those factors is, what are the costs? The costs of a wasted trial are not insignificant. And again, I note that this is a civil case, and any rule that you apply here is going to apply to other civil cases. You know, apparently it was a close case as well. It does appear that way, Your Honor, yes. And again, I just note that, you know, the plaintiff had a point of counsel. The trial didn't take very long, and then the jury took eight, you know, they say eight hours to deliberate, to come up with their verdict, and they had questions. It was a close case. I can't dispute that, Your Honor. I'm over time. I want to make one quick point, if you'll allow me, which is simply that, you know, plaintiff was appointed counsel from one of the best firms in Portland. If counsel didn't object to this, I think that's the way civil litigation works. There's a requirement to preserve error, as noted in Federal Civil Law Procedure 151. Thank you. Thank you. We ask you to affirm. We'll give you a minute additional for rebuttal. Thank you, Judge McKeon. And may it please the Court. I'd like to first make a point about the burden of a new trial. There is a special circumstance here that completely mitigates any prejudice. In this case, all of the testimony, all of the direct and cross examinations were prerecorded and played via video for the jury. That's described at page 8 of the red brief and page 228 of the supplemental excerpts of record. So to order a new trial here, you would not need to order a full-blown reexamination and cross examinations of all the witnesses. You could simply play the recording that already exists. With respect to the Eighth Circuit, if you look closely at each of those Eighth Circuit cases that the government cites, the Eighth Circuit applies a disjunctive standard of either derived pleasure or excessive cruelty. This Court required both, excessive cruelty and derived pleasure. So this is an unprecedented jury instruction that, as far as we can find, has never been given in any court in any circuit. The third point is, government counsel referenced this good-faith proviso that was omitted from the initial jury instructions. It wasn't given in that sentence, but it was given in paragraphs above and below it. That's at 133 and 134 of the excerpts of record. We would respectfully request that this Court reverse and remand for a new trial. Thank you, Your Honors. Thank you. Thank you both for your arguments this morning. Hoard v. Hartman is submitted. We also thank you, Mr. Haffenberg, for participating in our Courts Pro Bono program. I know it's always easier for the Attorney General as well to have a counseled appeal, and it's very helpful to the Court. So again, we thank both counsel for your argument this morning. Hoard v. Hartman is submitted.
judges: Tashima, McKeown, Paez